UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EFREM ERIC ELLIOTT,

    Plaintiff,

v.                                                              Case No:   2:17-cv-476-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **OPINION AND ORDER**

Before the Court is Plaintiff Efrem Eric Elliott's Complaint, filed on August 22, 2017. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum detailing their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**    **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.**    **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On July 15, 2013, Plaintiff filed an application for disability insurance benefits. (Tr. at 119, 208-209). Plaintiff asserted an onset date of January 1, 2012. (*Id.* at 208). Plaintiff's application was denied initially on January 16, 2014 and on reconsideration on March 25, 2014. (*Id.* at 119, 127). A hearing was held before Administrative Law Judge ("ALJ") William G. Reamon on May 23, 2016. (*Id.* at 63-109). The ALJ issued an unfavorable decision on August 10, 2016. (*Id.* at 46-58). The ALJ found Plaintiff not to be under a disability from January 1, 2012, the alleged onset date, through June 30, 2012, the date last insured. (*Id.* at 58).

On June 29, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on August 22, 2017. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 18).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

2

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff "last met the insured status requirements of the Social Security Act on June 30, 2012." (Tr. at 48). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2012, through his date last insured of June 30, 2012. (*Id.*). At step two, the ALJ determined that through the date last insured, Plaintiff suffered from the following severe impairments: "lumbar spine protrusions with bilateral foraminal encroachment; cervical spine multilevel disc bulges; and obesity." (*Id.* at 49). At step three, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.* at 51).

At step four, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. (*Id.* at 52). The ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. (*Id.* at 56). The ALJ considered Plaintiff's age, education, work experience, and RFC, and found that through the date last insured, there were jobs that existed in significant numbers in the national

economy that Plaintiff could have performed. (*Id.* at 57). The ALJ noted that the vocational expert identified the following sedentary, unskilled occupations with an SVP Code of 2 that through the date last insured, Plaintiff would have been able to perform : (1) addresser, DOT # 209.587-010; (2) table worker (fabrication, nec), DOT # 739.687-182; and (3) semiconductor dies loader (electron. comp.), DOT # 726.687-030. (*Id.* at 57).[2] The ALJ concluded that Plaintiff was not under a disability at any time from January 1, 2012, the alleged onset date, through June 30, 2012, the date last insured. (*Id.* at 58).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

4

into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises three issues. As stated by the parties, they are:

(1) Whether the ALJ properly considered Plaintiff's Mental Impairments.

(2) Whether the ALJ considered and weighed all of Plaintiff's impairments.

(3) Whether the ALJ's conclusion at step five was supported by substantial evidence.

(Doc. 25 at 9, 16, 20). The Court addresses each of these issues in turn.

### A. Whether the ALJ Properly Considered Plaintiff's Mental Impairments

Plaintiff argues that the ALJ improperly considered the evidence concerning Plaintiff's mental impairments. (*Id.* at 11). Specifically, Plaintiff claims that the ALJ improperly failed to include Plaintiff's mental impairments as a severe impairment in the decision and, in fact, considered Plaintiff's mental impairments to be mild. (*Id.* at 11-12). Plaintiff then argues that the ALJ should have included Plaintiff's mental impairments in the RFC assessment and further in the hypothetical question to the vocational expert. (*Id.* at 12). Plaintiff also claims that the ALJ's decision not to find Plaintiff's mental impairments severe contradicts the State Agency doctors' opinions, both of whom concluded that Plaintiff had severe mental impairments. (*Id.*). Finally, Plaintiff argues that the ALJ specifically stated that Plaintiff's ability to perform sedentary work was impeded by additional limitations that erode the unskilled occupational base, but did not identify these additional limitations. (*Id.* at 13).

The Commissioner asserts that substantial evidence supports the ALJ's finding that Plaintiff did not have severe mental impairments during the relevant time period of January 1,

5

2012 through June 30, 2012.  (*Id.* at 13).  The Commissioner argues that the ALJ observed that Plaintiff was not treated for any of his alleged impairments during this relevant period.  (*Id.* at 14).  The Commissioner further argues that the State Agency consultants, David Clay, Ph.D. and Corine Samwel, Ph.D. had insufficient information to assess Plaintiff's mental impairments during the relevant period because Plaintiff did not cooperate with Dr. Clay's request for additional information.  (*Id.* at 15).  Further, the Commissioner asserts that the ALJ afforded no weight to Dr. Clay's and Dr. Samwel's opinions because they were unable to complete the psychological reports due to insufficient medical evidence to assess the impairments.  (*Id.*).

In evaluating this issue, the Court notes that, at step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months.  *See* 20 C.F.R. §§ 404.1505(a).  This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, however, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  Instead, the ALJ is only required to consider a claimant's impairments in combination, whether severe or not.  *Id.*  If any impairment or

combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted).

Here, the ALJ found that through the date last insured, Plaintiff had the severe impairments of lumbar spine protrusions with bilateral foraminal encroachment, cervical spine multilevel disc bulges, and obesity. (Tr. at 49). Because the ALJ found at least one condition to be severe, the ALJ satisfied the step two analysis. *See Griffin*, 560 F. App'x at 841-42. Moreover, even if the State Agency consultants found Plaintiff's mental impairments severe – which is questionable as they apparently did not have sufficient information to render opinions – this possible error is harmless because the ALJ found other severe impairments at step two.[3]

In addition, so long as the ALJ considered Plaintiff's severe impairments in combination with Plaintiff's non-severe impairments – including his alleged mental impairments – any potential error is harmless. *See id.* Here, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R. §] 404.1529 and SSRs 96-4p." (Tr. at 52). Further, the ALJ specifically evaluated Plaintiff's mental impairments

---

[3] As the ALJ noted, Dr. Clay and Dr. Samwell both stated repeatedly that they had "insufficient evidence" to determine Plaintiff's restrictions: on daily living; social functions; concentration, persistence, or pace; episodes of decompensation; and the presence of the "C" criteria. (Tr. at 51, 116, 124). Both doctors conclude that there is insufficient evidence to evaluate Plaintiff's allegations of mental impairments as of the date last insured. (*Id.*). Thus, the ALJ properly afforded no weight to these opinions. (*Id.* at 56).

7

at length, explaining his findings regarding activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. (*Id.* at 50-51). Based on these statements and the ALJ's review of the medical records in the decision, the Court finds no error because the ALJ considered all of Plaintiff's impairments, whether severe or non-severe, in combination. Therefore, any potential error by the ALJ is harmless. *See Griffin*, 560 F. App'x at 841-42.

The ALJ further considered these findings in evaluating Plaintiff's RFC. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a plaintiff's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Plaintiff claims that the ALJ found Plaintiff's mental impairments "significant," but did not include these symptoms in Plaintiff's RFC. (Doc. 25 at 12). The ALJ explained:

> Although the claimant alleged having extreme anxiety, paranoia, and depression in his application, and while it is clear that his symptoms were significant, the record does not establish that they were so debilitating as to preclude all work. The undersigned also notes the claimant has not required medical treatment, hospital confinement, or surgical intervention due to these impairments. . . . The undersigned also notes that the claimant's medically determinable mental impairments, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities.

> However, the undersigned does acknowledge that the claimant has a history of treatment for an obsessive-compulsive disorder and an adjustment reaction with brief depressive reaction with Gulf Coast Counseling in 2009 (Ex. C1F). However, his alleged limitations are rather extreme and are not fully supported by the available medical evidence for the period from January 1, 2012, through June 30, 2012.

(Tr. at 49). Further, the ALJ discussed Christine Needham, Ed.D.'s Mental Disorders form completed on April 19, 2016, and found that Dr. Needham:

> had limited access to evidence of the claimant's condition, other than the claimant's subjective reports, during the period from his alleged onset date of January 1, 2012, through his date last insured of June 30, 2012. His contemporaneous psychological examination did not justify even that subsequent level. Dr. Needham did not have any significant mental status findings which would support his severe psychological limitations.

(*Id.* at 49-50). Thus, the Court finds that the ALJ considered Plaintiff's mental impairments, but found them not severe. Accordingly, the Court further finds that the ALJ was not required to include these non-severe impairments in Plaintiff's RFC or in the hypothetical to the vocational expert. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (finding that an ALJ is not required to including findings in the hypothetical to the vocational expert that are not supported by the record).

Lastly, Plaintiff asserts that the ALJ stated that Plaintiff's ability to perform work at a sedentary level "is 'impeded by additional limitations'" that erode the unskilled occupational base, but the ALJ does not include these additional limitations in the RFC or in the hypothetical to the vocational expert. (Doc. 25 at 13). The ALJ found that through the date last insured, Plaintiff had the RFC to perform sedentary work. (Tr. at 52). The ALJ did not include any further limitations in the RFC. (*Id.*). The ALJ posed a hypothetical to the vocational expert that asked the vocational expert to assume a person was capable of performing sedentary work without further limitations. (*Id.* at 102). The vocational expert determined that this hypothetical

person was capable of performing the work of addresser, table worker, and semiconductor dies loader. (*Id.*). In his decision, the ALJ relied on the vocational expert's testimony to find Plaintiff capable of performing these jobs. (*Id.* at 57).

By contrast, the ALJ also stated in the decision:

> However, the claimant's ability to perform all or substantially all of the requirements of this level of work was *impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base*, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

(*Id.* (emphasis added)). This statement appears to be a drafting error. In the ALJ's RFC, the ALJ found that Plaintiff is capable of performing sedentary work without limitations, and this finding is consistent with the ALJ's hypothetical to the vocational expert. Thus, the Court finds that the ALJ made a drafting error, and this error does not warrant remand.

The Court finds that the ALJ did not err in considering Plaintiff's mental impairments from his onset date of January 1, 2012 through the date last insured of June 30, 2012. Further the Court finds that the ALJ's decision as to Plaintiff's mental impairments is supported by substantial evidence. Thus, the Court affirms the Commissioner's decision as to this issue.

**B.      Whether the ALJ Considered and Weighed All of the Plaintiff's Impairments**

Plaintiff asserts that the ALJ erred in failing to consider Plaintiff's osteoarthritis and headaches. (Doc. 25 at 17). Plaintiff claims that on July 1, 2014, medical records show that Plaintiff suffers from osteoarthritis in his right knee. (*Id.*). Further, Plaintiff claims that he suffers from severe headaches and was diagnosed with occipital neuralgia and myofascial pain. (*Id.*).

The Commissioner argues that the ALJ considered all relevant evidence in assessing Plaintiff's RFC. (*Id.* at 18). The Commissioner also argues that the evidence cited by Plaintiff is nearly two years after the relevant period considered by the ALJ. (*Id.* at 19). The Commissioner asserts that Plaintiff cites to complaints of headaches and various abnormalities from March to July of 2014, and such records do not relate to the relevant time period. (*Id.*). Further, the Commissioner notes that the evidence Plaintiff cites was "precipitated by a car accident that occurred on June 7, 2013," about a year after the date last insured. (*Id.*). The Commissioner also cites to the ALJ's decision where he observed that Plaintiff did not receive treatment for any of his alleged impairments during the relevant period. (*Id.*). Further, the Commissioner asserts that Plaintiff claimed he was unable to seek medical attention until February 2014 "because he was busy working in lawn service." (*Id.* at 20). Thus, the Commissioner argues that the ALJ properly considered all of the relevant evidence in assessing Plaintiff's claim. (*Id.*).

"An individual claiming Social Security disability benefits must prove that he is disabled." *Rodriguez v. Comm'r of Soc. Sec.*, No. 17-13046, 2018 WL 3046394, at *2 (11th Cir. June 20, 2018) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Further, a plaintiff must establish that he is disabled during the relevant time period. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured."); *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) ("Consequently, to prove her eligibility for DIB, Mason had to prove that she suffered from a disability between her alleged onset of December 2004, and her last-insured date of December 2005."). Thus, in the instant case, Plaintiff must show that he suffered from osteoarthritis and occipital neuralgia during the

relevant time period, specifically from the alleged onset date of January 1, 2012 through the date last insured of June 30, 2012.

Nonetheless, an ALJ must assess a plaintiff's RFC by considering all of the relevant medical and other evidence. 20 C.F.R. § 404.1545. Evidence that post-dates a plaintiff's insured status may be relevant if it bears upon the severity of a plaintiff's condition before the expiration of the insured status. *Meek v. Astrue*, No. 308-CV-317-J-HTS, 2008 WL 4328227, at *2 (M.D. Fla. Sept. 17, 2008) (citation omitted). Therefore, if an ALJ focuses on the medical evidence during the relevant time frame to the exclusion of all the other medical evidence in the record, then the decision is flawed. *Fay v. Astrue*, No. 8:11-CV-1220-T-JRK, 2012 WL 4471240, at *3 (M.D. Fla. Sept. 27, 2012); *Fitzgibbon v. Comm'r of Soc. Sec.*, No. 8:15-CV-706-T-JSS, 2016 WL 4087475, at *6 (M.D. Fla. Aug. 2, 2016).

Here, Plaintiff argues that he included leg/knee problems and severe headaches as part of his application for benefits. (Doc. 25 at 17 (citing Tr. at 224)). As to the leg/knee problems, Plaintiff cites to a scan on July 1, 2014, to show that he suffers from osteoarthritis in his right knee. (*Id.* (citing Tr. at 406)). Plaintiff also states that he testified at the hearing held on May 23, 2016, that he has knee pain. (*Id.* (citing Tr. at 84)).

As to the severe headaches, Plaintiff cites to medical reports from David B. Sudderth, M.D. dated April 10, 2014, April 28, 2014, and May 30, 2014. (Doc. 25 at 17-18 (citing Tr. at 350, 354, 358, 360, 496, 502-503)). Plaintiff also cites to radiology results dated December 2, 2015. (Doc. 25 at 18 (citing Tr. at 509)). Further, Plaintiff cites to Frank P. Casdia, Jr. D.C.'s report dated March 10, 2014. (*Id.* (citing Tr. at 334)).

Plaintiff claims that despite this evidence, the ALJ did not address Plaintiff's knee impairment in the decision and the ALJ failed to consider Plaintiff's occipital neuralgia in

Plaintiff's RFC. (Doc. 25 at 17-18). Here, the ALJ stated that "after careful consideration of the entire record," he "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R. §] 404.1529 and SSRs 96-4p." (Tr. at 52). Thus, when assessing Plaintiff's RFC, the ALJ stated that he considered the entire record and all of Plaintiff's symptoms.

In addition, the ALJ cited to the office treatment records dated February 28, 2014 through March 24, 2014, Dr. Casdia's treatment records , and Dr. Sudderth's treatment records in the decision. (*Id.* at 48, 51, 53, 54, 55). Further, Plaintiff does not cite to any evidence that indicates that the medical records concerning Plaintiff's osteoarthritis and occipital neuralgia are relevant because they bear upon the severity of Plaintiff's condition before the expiration of the insured status, which in this case is June 30, 2012. All of the cited medical records are dated nearly two years or more after Plaintiff's date last insured and Plaintiff fails to show that these records are tethered to symptoms or impairments that Plaintiff suffered during the relevant period as established by medical records from the relevant period. Further, the ALJ noted that "the record reflects no actual treatment for his alleged impairments during the period from his alleged onset date of January 1, 2012 through his date last insured of June 30, 2012." (*Id.* at 53). Thus, the Court finds that the ALJ did not err in his consideration and weight of Plaintiff's osteoarthritis and occipital neuralgia and the ALJ's decision is supported by substantial evidence as to this issue.

### C. Whether the ALJ's Conclusion at Step Five Was Supported by Substantial Evidence

Plaintiff argues that the number of jobs identified by the vocational expert for the jobs of addresser, table worker, and semiconductor dies loader are actually much lower than the vocational expert provided in his testimony. (Doc. 25 at 22-23).

The Commissioner argues that the ALJ is permitted to rely on the vocational expert's testimony and, even if the number of jobs were reduced as Plaintiff contends, Plaintiff fails to show the reduced number would not constitute a significant number of jobs in the national economy. (*Id.* at 25-26).

Once a Plaintiff proves that he can no longer perform his past relevant work, then the burden shifts to the Commissioner to show that a plaintiff can perform other jobs that are significant in number in the national economy, considering the plaintiff's age, education, and work experience. *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). Thus, the ALJ has the burden to produce evidence about the existence of other work. *Brooks*, 133 F. App's at 670. "The ALJ may satisfy this burden and provide this evidence through a [vocational expert's] testimony." *Id.* (citing *Phillips*, 357 F.3d at 1240; 20 C.F.R. § 404.1566(e)).

Jobs exist in the national economy when they exist in significant numbers either in the region where a plaintiff lives or in several other regions of the country. *Id.* "The ALJ, relying on the [vocational expert's] testimony, and not the [vocational expert], determines whether a specific number of jobs constitutes a significant number." *Id.* (citing 20 C.F.R. § 404.1512(g)). To prove disability, a plaintiff must show that he is unable to perform the specified jobs. *Id.*

The Eleventh Circuit has not fashioned a bright line rule as to what constitutes a significant number of jobs. "This Court has never held that a minimum numerical count of jobs

must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations. We have concluded, however, that the 'appropriate focus under the regulation is the national economy,' not the local economy in which the claimant lives." *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015) (citation omitted). The Eleventh Circuit has upheld an ALJ's finding that 174 small appliance repairman positions in the area where a plaintiff resided established the existence of work in significant numbers. *Brooks*, 133 F. App'x at 670 (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir.1987)).

Here, when asked at the hearing how the vocational expert arrived at the job numbers, the following exchange occurred between counsel and the vocational expert:

> Atty: In terms of those jobs that you've identified Mr. Heartsill, I know you told me at the first hearing, but we're at another hearing, so I have to ask you again. What's the source of your numbers?
> VE: Bureau of Labor Statistics through the Occupational Employment Survey.
> Atty: And then how do you calculate the actual final number you get? For example, for the Addresser.
> VE: Well, on that, you know, when you're looking at the OES and it presents it in an industry or SOC type of code or, you know, you're going to find the percentage of those jobs that fall within that group, and it's a matter of just taking that percentage from them, total number.
> Atty: So, you look at what the OES puts first, for example, the SOC Code, figure out how many jobs are in that SOC Code, and then that's how you calculate the percentages?
> VE: Yes.
> Atty: Okay. And the Addresser job, if I recall, I don't have it in front of me, but is that actually addressing envelopes?
> VE: Yes, sir. It can be addressing envelopes. It can also be just affixing preproduced, you know, from a computer, addresses that go on packages, that type of things, small [INAUDIBLE].
> Atty: And I know for that, we're talking about how the DOT actually describes it, but in practice, and in reality now, isn't the addresser actually a job that's been encompassed by other – meaning, people do more than just the addressers. They have to answer the phone. They have to make copies. They're doing office clerical tasks, and now, the majority of addressing positions are encompassed as part and parcel of other jobs.
> VE: Well, that's – doing mail in bulk mail like you're describing is part of other jobs. The addresser position, that is basically a job that's working at either a small mailroom where you're actually doing that, or as I said, you have

> some premarked stickers that has the addresses and things that are going out in parcel post, which you're just affixing to that, so that's what that person does.
>
> Atty: Okay. And for example, the Loader, Semiconductor Dies position -- did I say that right?
>
> VE: Yes.
>
> Atty: Where are those jobs at? Meaning – I mean we're sitting here in Southwest Florida, so are they in other regions of the country? Like, is that more of a position that might be up north?
>
> VE: Well, they're found in other regions. Of course, you know, you've got places where they're producing things out on the West Coast as well, but they're actually some of those jobs in the State of Florida as well. Not a lot of them, but there are a few of them. And there was a company up just north of Atlanta – not Atlanta, Orlando -- that was doing that. And I think that's where the majority of those – like I said, there's not a lot of them in state. Most of them are outside of the state.
>
> Atty: Okay. What were the state numbers? Do you know just off hand?
>
> VE: It was 144.

(Tr. at 104-106).[4]

In this case, Plaintiff argues that the percentages used by the vocational expert are inconsistent with the actual numbers collected by the Bureau of Labor Statistics. (Doc. 25 at 22). Plaintiff claims that the job of addresser belongs to the Occupational Employment Statistics ("OES") group of word processors and typists. (*Id.*). Plaintiff asserts that this group contains only 67,230 jobs nationally, which is a lower number than the 71,708 number of jobs provided by the vocational expert. (*Id.* (citing Tr. at 102)). Further, Plaintiff asserts that this OES group contains seven DOT occupations in total with addresser being one of them. (*Id.* at 22). Plaintiff also asserts that the occupations other than addresser are skilled work, not applicable to Plaintiff. (*Id.*). Plaintiff claims that reducing the 67,230 figure to discount the other jobs in this category is a greater erosion in the number of jobs than the figure provided by the vocational expert. (*Id.* at 22-23). Plaintiff makes somewhat similar arguments as to the table worker and semiconductor

---

[4] The quoted material was modified to indicate whether the speaker was counsel or the vocational expert.

dies loader positions; basically concluding that the job numbers provided by the vocational expert were too high, unreliable, and not supported by substantial evidence. (*Id.* at 23).

Here, the vocational expert explained in depth how he arrived at the numbers. (Tr. at 104-106). The ALJ relied on the vocational expert's testimony as to the number of jobs available for addresser, table worker, and semiconductor dies loader. (*Id.* at 57). "The Social Security regulations provide that an ALJ may rely on a [vocational expert's] knowledge and expertise, and they do not require a [vocational expert] produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 840 (11th Cir. 2012); *see also Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise.").

Even assuming *arguendo* that Plaintiff is correct in his calculation of the number of jobs, Plaintiff fails to show that even if the job numbers were reduced, that the results would not constitute a significant number of jobs in the national economy. For example, even assuming that there are 676 table worker jobs, Plaintiff does not explain why this number does not constitute a significant number of jobs in the national economy. (Doc. 25 at 23). Further, there is nothing in the record that supports Plaintiff's position. *See De Lashmit v. Comm'r of Soc. Sec.*, No. 2:17-CV-363-FTM-99CM, 2018 WL 3954341, at *3 (M.D. Fla. Aug. 17, 2018).[5]

---

[5] Plaintiff again raises the issue that the ALJ found that Plaintiff's sedentary work was "impeded by additional limitations." (Doc. 25 at 24). The Court previously determined in section II.A. *supra*, that the language that Plaintiff is "impeded by additional limitations" as far as the sedentary level of work appears to be a drafting error as evinced by the ALJ not including any additional limitations in Plaintiff's RFC and in the hypothetical posed to the vocational expert. (Tr. at 52, 102). Thus, the Court finds that this language is a drafting error and does not warrant remand. Further, this conclusion leads to a finding that the ALJ did not fail to include all of Plaintiff's limitations in the hypothetical question posed to the vocational expert, as more fully discussed in section II.A.

Thus, the Court finds that the ALJ did not err in relying on the vocational expert's testimony at step five of the sequential evaluation and, further, the ALJ's decision is supported by substantial evidence as to this issue.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and the decision was decided upon proper legal standards.

Accordingly, it is hereby **ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 20, 2018.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties